**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>HANDLE PREFORMS, LLC<br><br>   Debtor. | Chapter 11<br>Subchapter V<br><br>Case No. 26-20125-jrs |
| HANDLE PREFORMS, LLC<br><br>   Plaintiff,<br><br>v.<br><br>DT INVENTIONS, LLC and PRACTICALLY IMPOSSIBLE LABS, LLC<br><br>   Defendants. | Adversary Proc. No. 26-02012-jrs |
| DT INVENTIONS, LLC and PRACTICALLY IMPOSSIBLE LABS, LLC<br><br>   Counterclaim Plaintiffs,<br><br>v.<br><br>HANDLE PREFORMS, LLC<br><br>   Counterclaim Defendant. | |

**DEFENDANTS DT INVENTIONS, LLC AND PRACTICALLY
IMPOSSIBLE LABS, LLC'S ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR
<u>DECLARATORY JUDGMENT AND BREACH OF CONTRACT</u>**

DT INVENTIONS, LLC ("DTI") and PRACTICALLY IMPOSSIBLE LABS, LLC

("PIL") (DTI and PIL shall collectively be referred to as "Defendants" or "Counterclaim

Plaintiffs") submit their Answer, Affirmative Defenses and Counterclaims (the "Answer") to HANDLE PREFORMS, LLC's ("Plaintiff" or "Counterclaim Defendant") Complaint for Declaratory Judgment and Breach of Contract (the "Complaint") and state as follows:

Except as specifically admitted below, Defendants deny each and every allegation contained in the Complaint. Any factual allegation below that is admitted is only admitted specifically to the specifically admitted facts, not to any purported conclusions, characterizations, implications or speculations that may arguably follow from the admitted facts.

To the extent that the headings or other non-numbered statements in the Complaint contain any allegations, Defendants deny each and every allegation therein. Instead, Defendants merely repeat the headings set forth in the Complaint for convenience.

Defendants deny that Plaintiff is entitled to the relief requested in the Complaint or to any other relief.

Defendants respond to the specific allegations in the Complaint as follows:

## INTRODUCTION

1. Paragraph 1 of the Complaint is an introductory statement to which no response is necessary. Defendants further state that paragraph 1 of the Complaint contains legal conclusions to which no response is required. To the extent necessary, Defendants deny the allegations contained in paragraph 1 of the Complaint.

## JURISDICTION AND VENUE

2. Defendants state that Paragraph 2 contains legal conclusions to which no response is required.  To the extent that a further response is required, Defendants deny the allegations in paragraph 2 of the Complaint.

2

3.     Defendants state that paragraph 3 contains legal conclusions to which no response is required. To the extent that a further response is required, the allegations in paragraph 3 are denied.

4.     Defendants state that paragraph 4 contains legal conclusions to which no response is required. To the extent that a further response is required, the allegations in paragraph 4 are denied.

## THE PARTIES

5.     Defendants lack sufficient information or belief to admit or deny the allegations contained in paragraph 5, and on that basis, Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.     Defendants admit to the registered agent and corporate information but the remaining allegations contain legal conclusions to which no response is required and as such the remaining allegations contained in paragraph 6 of the Complaint are denied.

7.     Defendants admit to the registered agent and corporate information, but the remaining allegations contain legal conclusions to which no response is required and as such the remaining allegations contained in paragraph 7 of the Complaint are denied.

## FACTUAL BACKGROUND

**A.     The Agreements Between the Parties**

8.     Defendants admit the first sentence contained in paragraph 8 and that the License Agreement attached to the Complaint as Exhibit A is a true and correct copy of the License Agreement. Defendants deny the remaining allegations contained in paragraph 8 of the Complaint.

9.     Defendants admit that the Term Sheet with an effective date of January 14, 2020 and attached to the Complaint as Exhibit B, was executed and is a true and correct copy. Defendants deny the remaining allegations contained in paragraph 9 of the Complaint.

10.     Defendants admit that the allegations contained in paragraph 10 of the Complaint were accurate at the time the DLA was executed, but states that any such license was terminated, and therefore, HPL no longer has a license to any of the patents or other materials listed in paragraph 10 of the Complaint.

11.     Defendants admit the first sentence of paragraph 11 of the Complaint and that the DNA attached to the Complaint as Exhibit C is a true and correct copy but deny the remainder of the allegations contained in paragraph 11 of the Complaint.

12.     Defendants admit the allegations in paragraph 12 of the Complaint.

13.     Defendants admit that the language in paragraph 13 is a true and correct excerpt of the DLA. Defendants further state that paragraph 13 contains legal conclusions to which no response is required. To the extent that a further response is required, the allegations in paragraph 13 of the Complaint are denied.

14.     Defendants admit that the language in paragraph 14 is a true and correct excerpt of the DLA. Defendants further state that paragraph 14 contains legal conclusions to which no response is required. To the extent that a further response is required, the allegations in paragraph 14 of the Complaint are denied.

B.     **DTI's Representations Regarding the Proprietary Nature of the Technology.**

15.     Defendants deny the allegations contained in paragraph 15 of the Complaint.

16.     Defendants deny the allegations contained in paragraph 16 of the Complaint.

C.     **Discovery of the Prior Existing Patent of Integrated Plastics by Pty. Ltd.**

17.     Defendants deny the allegations contained in paragraph 17 of the Complaint.

18.     Defendants deny the allegations contained in paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in paragraph 19 of the Complaint.

**D.    DTI's Failure to Honor Its Indemnification Obligation and HPL's Reasonable Response**

20.    Defendants deny the allegations contained in paragraph 20 of the Complaint.

21.    Defendants deny the allegations contained in paragraph 21 of the Complaint.

22.    Defendants deny the allegations contained in paragraph 22 of the Complaint.

23.    Defendants deny the allegations contained in paragraph 23 of the Complaint.

24.    Defendants deny the allegations contained in paragraph 24 of the Complaint.

**E.    Defendants' Wrongful Termination of the DLA**

25.    Defendants admit that Plaintiff's arrangement with IPPL was a breach and that Greg Kershner met with Tom Thibodeau and Tim Thibodeau. Defendants otherwise deny the allegations contained in paragraph 25 of the Complaint.

26.    Defendants admit a Notice of Termination was issued but otherwise deny the allegations contained in paragraph 26 of the Complaint.

27.    Defendants state that the allegations in paragraph 27 of the Complaint, including subparts a-e, contain legal conclusions to which no response is required. To the extent that a further response is required, the allegations in paragraph 27 of the Complaint, including subparts a-e, are denied.

28.    Defendants deny the allegations contained in paragraph 28 of the Complaint.

29.    Defendants deny the allegations contained in paragraph 29 of the Complaint.

<u>**COUNT I**</u>
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201; 11 U.S.C. §105(a)**

30.    For answer to paragraph 30 of the Complaint, Defendants repeat and incorporate herein its answers with respect to paragraphs 1-29 of the Complaint.

31.     Defendants admit that the termination of the DLA was lawful and effective. Defendants further state that paragraph 31 contains legal conclusions to which no response is required.  To the extent that a further response is required, Defendants deny the allegations contained in paragraph 31 of the Complaint.

32.     Defendants deny the allegations contained in paragraph 32 of the Complaint.

33.     Defendants admit that the termination of DLA was lawful and that Plaintiff materially breached the same. Defendants deny that the only way Plaintiff materially DLA was by entering into an arrangement with IPPL.

34.     Defendants state that paragraph 34 contains legal conclusions to which no response is required. To the extent that a further response is required, Defendants deny the allegations contained in paragraph 34 of the Complaint.

35.     Defendants state that paragraph 35 contains legal conclusions to which no response is required. To the extent that a further response is required, Defendants deny the allegations contained in paragraph 35 of the Complaint.

## COUNT II
## BREACH OF CONTRACT

36.     For answer to paragraph 30 of the Complaint, Defendants repeat and incorporate herein its answers with respect to paragraph s 1-35 of the Complaint.

37.     Defendants admit the allegations contained in paragraph 37 of the Complaint that the DLA is a valid, binding, and enforceable contract that was supported by adequate consideration

38.     Defendants deny the allegations contained in paragraph 38 of the Complaint.

39.     Defendants deny the allegations contained in paragraph 39 of the Complaint, including, subparts a-d.

6

40.     Defendants deny the allegations contained in paragraph 40 of the Complaint or that Plaintiff has incurred any damage.

41.     Defendants state that paragraph 41 contains legal conclusions to which no response is required. To the extent that a further response is required, Defendants deny the allegations contained in paragraph 41 of the Complaint.

42.     Defendants deny the allegations contained in paragraph 42 of the Complaint.

### PRAYER FOR RELIEF

Plaintiff's Prayer for Relief sets forth its request to which no response is necessary. To the extent necessary, Defendants deny the allegations contained in the Prayer for Relief section. Defendants further deny that Plaintiff is entitled to any relief whatsoever in this case, as requested in the Complaint or otherwise, Plaintiff's Prayer for Relief should, therefore, be denied in its entirety and with prejudice and Plaintiff should take nothing against Defendants, and the Court should rule in favor of Defendants, award damages in favor of Defendants, assess costs against Plaintiff, award Defendants its attorneys' fees, and grant all other and further relief to which Defendants are entitled.

### GENERAL DENIAL

Defendants further deny each allegation contained in the Complaint not specifically admitted in this Answer.

### AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth in its responses to paragraphs 1 through 42 of the Complaint, and without undertaking any of the burdens imposed by law, Defendants allege and assert the following additional defenses set forth below in response to Plaintiff's allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by operation of law, regardless of how such defenses are denominated herein.

7

## FIRST DEFENSE

Plaintiff is bound by the contractual agreements entered into with Defendants, and Plaintiff's claims and causes of action are limited and governed by the express provisions of the same. Defendant hereby incorporates the Agreements as defined in the Counterclaim below that, including all of the express limitations of liabilities, waivers of damages, waivers of consequential damages, defenses, limitations, waivers, and waivers of warranties, and "AS IS" provisions set forth therein. Some of the relevant contractual provisions that expressly govern, limit, and/or bar Plaintiff's claims and causes of action include, but are not limited to, the following:

> **10.    Disclaimer of Warranties; Limitation of Liability.**
>
> 10.1    EXCEPT AS PROVIDED ABOVE, AND TO THE MAXIMUM EXTENT OTHERWISE ALLOWABLE UNDER APPLICABLE LAW, THE DTI IP, PATENTS, THE DTI TRADEMARKS, AND ALL OTHER MATERIALS PROVIDED BY DTI HEREUNDER ARE PROVIDED STRICTLY ON AN AS-IS BASIS, AND DTI MAKES NO OTHER REPRESENTATIONS OR WARRANTIES, AND HEREBY EXPRESSLY DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, WITH RESPECT TO DTI IP, PATENTS, TRADEMARKS, AND OTHER SUCH MATERIALS, THE USE THEREOF, OR OTHERWISE IN RELATION TO THIS AGREEMENT, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS. DTI DOES NOT REPRESENT OR WARRANT THAT ANY DTI IP, PATENT, OR ANY OTHER MATERIAL PROVIDED BY DTI WILL BE ERROR-FREE, AND LICENSEE ACKNOWLEDGES AND AGREES THAT IT HAS RELIED ON NO WARRANTIES WITH RESPECT TO ITS USE OF THE DTI IP, PATENTS, OR OTHER SUCH MATERIALS AND THAT ITS USE THEREOF IS STRICTLY AT ITS OWN RISK. THESE DISCLAIMERS WILL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY PROVIDED HEREIN.
>
> 10.2    TO THE MAXIMUM EXTENT ALLOWABLE UNDER APPLICABLE LAW, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, EXEMPLARY, PUNITIVE, SPECIAL OR INCIDENTAL DAMAGES, INCLUDING ANY LOST PROFITS OR BUSINESS OPPORTUNITIES, ARISING FROM OR RELATING TO THIS AGREEMENT. EXCEPT WITH RESPECT TO ALL INDEMNIFICATION OBLIGATIONS PURSUANT TO SECTION 8 HEREOF, EACH PARTY'S TOTAL CUMULATIVE LIABILITY TO THE OTHER PARTY IN CONNECTION WITH THIS AGREEMENT, ALL DISPUTES UNDER THIS AGREEMENT, AND FOR ALL DAMAGES ARISING FROM OR RELATING TO THIS AGREEMENT, THE DTI IP, THE DTI TRADEMARKS, THE PATENTS, OR ANY OTHER MATERIALS PROVIDED BY OR ON BEHALF OF DTI PURSUANT THIS AGREEMENT, WHETHER IN CONTRACT OR TORT OR OTHERWISE, WILL NOT EXCEED THE AGGREGATE ROYALTIES ACTUALLY PAID BY LICENSEE TO DTI UNDER THIS AGREEMENT IN THE 12 MONTHS IMMEDIATELY PRIOR TO THE EVENT GIVING RISE TO LIABILITY. LICENSEE ACKNOWLEDGES THAT THESE LIMITATIONS OF LIABILITY FORM AN ESSENTIAL PART OF THIS AGREEMENT AND THAT THE ROYALTIES REFLECT THE ALLOCATION OF RISK SET FORTH IN THIS AGREEMENT AND THAT DTI WOULD NOT ENTER INTO THIS AGREEMENT ON THESE TERMS WITHOUT THESE LIMITATIONS ON ITS LIABILITY.

## SECOND DEFENSE

Plaintiff's claims are barred as a result of its prior material of breach of contract.

## THIRD DEFENSE

The events, which are the subject of this lawsuit, were the result of new, independent, superseding and/or intervening causes.

8

## FOURTH DEFENSE

Defendants assert the affirmative defenses of offset, credit, release and accord and satisfaction.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of misuse, laches, waiver, unclean hands, estoppel (including equitable estoppel), waiver of reliance, ratification and/or other applicable equitable doctrines.

## SIXTH DEFENSE

Plaintiff failed to mitigate its damages as required under applicable law; therefore, any such claims or causes of action are barred to that extent

## SEVENTH DEFENSE

Defendants plead non-infringement.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

## RESERVATION OF RIGHTS

Defendants may have other separate and additional defenses of which it is not presently aware and hereby reserve the right to raise such defenses by amendment of this Answer, including to conform to proof at trial. Defendants therefore reserve all defenses under the Federal Rules of Civil Procedure, including those listed in Rule 8(c), as made applicable hereto by Federal Rule of Bankruptcy Procedure 7008, and any other and additional defenses, at law or in equity, that are now or may become available or appear during, or as a result of, discovery proceedings in this action.

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' COUNTERCLAIMS

Counterclaim Plaintiffs (i.e. DTI and PIL) make and file their Counterclaim complaining of Counterclaim Defendant (i.e. Plaintiff). In support thereof, Counterclaim Plaintiffs respectfully show the following:

## SUMMARY OF THE DISPUTE

1.      This Counterclaim is a breach-of-contract dispute wherein Counterclaim Plaintiffs seek monetary damages and specific performance for Counterclaim Defendant's breaches of a license agreement and domain name license agreement between Counterclaim Plaintiffs and Counterclaim Defendant, including Counterclaim Defendant's unauthorized dealings with Counterclaim Plaintiffs competitor Integrated Plastics Pty. Ltd ("IPPL"), misuse of Counterclaim Plaintiffs' intellectual property and marks, nonpayment of royalties and fees, and withholding of Counterclaim Plaintiffs-owned website content from Counterclaim Plaintiffs upon termination of those agreements.

## JURISDICTION AND VENUE

2.      Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1367(a) (supplemental jurisdiction).

3.      Counterclaim Plaintiffs has consented to personal jurisdiction in this Court by virtue of filing its Complaint in the above-captioned case.

4.      Venue is proper with respect to each of the following Counterclaims.

## PARTIES

2.      Counterclaim Plaintiffs are each a Texas limited liability company doing business under the laws of the State of Texas.

3.      Counterclaim Defendant is a company organized under the laws of Delaware, United States of America.

10

**BACKGROUND FACTS**

4.      Counterclaim Plaintiffs and Counterclaim Defendant (together, the "Parties") entered into a License Agreement with an effective date of September 1, 2019. The License Agreement is attached as **Exhibit A**. The Parties entered into an addendum to the License Agreement, the Term Sheet (together with the License Agreement, the "Definitive License Agreement" or "DLA"), effective January 14, 2020, which outlined the terms of the licensing transaction between the Parties. The Term Sheet is attached as **Exhibit B**.

5.      Under the DLA, Counterclaim Plaintiffs granted Counterclaim Defendant a 15-year, exclusive, non-transferable license to use Counterclaim Plaintiffs' intellectual property ("IP") and technology to manufacture dairy-style handled bottle preforms (the "Preform(s)") under Counterclaim Plaintiffs' "BottleOne" trademark and sell the Preforms to existing and new customers of Counterclaim Defendant in North America. Counterclaim Plaintiffs also granted Counterclaim Defendant a non-transferable license to Counterclaim Plaintiffs' "BottleOne" trademark, in word form and any figurative forms, for Counter Defendant's use in selling the Preforms. Counterclaim Plaintiffs retained sole and exclusive ownership of all worldwide right, title, and interest in and to all Counterclaim Plaintiffs' IP and trademarks.

6.      In consideration for that license, Counterclaim Plaintiff agreed to pay Counterclaim Plaintiffs $0.0225 per Preform produced and sold pursuant to the DLA for the first 500 million Preforms sold, and $0.03 for each Preform produced and sold thereafter (collectively referred to as "Royalties"). Counterclaim Defendant was also required to pay Counterclaim Plaintiffs minimum royalties of $75,000 per month beginning January 1, 2022 ("Minimum Royalties), and to have paid Counterclaim Plaintiffs a cumulative royalty amount of $3,500,000 by December 31, 2023 ("Cumulative Royalties"). Non-payment of any Royalties by certain deadlines would result

11

in accrual of a late payment fee owed by Counterclaim Defendant to Counterclaim Plaintiffs in the amount of 1.5% per month, calculated from the date the Royalty was first due. Continued non-payment of Royalties would result in suspension and ultimately revocation of the license. To date, Counterclaim Defendant has not paid all Royalties due for sales of Preforms by Counterclaim Defendant, including Minimum and Cumulative Royalties. Counterclaim Defendant has also not paid all associated late fee payments due as a result of late and unpaid Royalties.

7. Under the DLA, Counterclaim Defendant agreed not to use Counterclaim Plaintiffs' IP to develop any products, methods, or other IP similar to or which otherwise competes with the Preforms or Counterclaim Plaintiffs' related IP and technology. Counterclaim Defendant agreed not to engage or partner with any third party in connection with its license in any manner in relation to products which compete with the Preforms or Counterclaim Plaintiffs' related IP and technology. Counterclaim Defendant agreed not to disclose, grant access, or otherwise make available for use to any third party any Counterclaim Plaintiffs' IP, technology, or trademarks without the express prior written consent of Counterclaim Plaintiff. Counterclaim Defendant agreed to ensure that all products bearing relevant Counterclaim Plaintiffs' trademarks would be of equal or greater quality to other products sold in connection with those trademarks, and to not do anything that would damage or depreciate the goodwill associated with those trademarks. Counterclaim Defendant agreed to maximize the exposure of Counterclaim Plaintiffs' technology within the relevant markets and the sale of Preforms (the "Marketing Services"), hire and manage a sales force of sufficient size and quality through which to do so, and employ Bill Duelge and Brian Lynch to assist Counterclaim Defendant in doing so.

8. In material breach of the DLA, Counterclaim Defendant contracted with IPPL, a direct competitor of Counterclaim Plaintiffs, which produces handled bottles that compete with

the Preforms and related Counterclaim Plaintiffs IP. IPPL, through its employees, agents, or representatives has begun informing the trade that, in reference to its agreement with Counterclaim Defendant, a deal has been concluded by which "BottleOne"—Counterclaim Plaintiffs' licensed trademark—is to become IPPL's licensee for Europe, the UK, and the Americas and which allows "BottleOne" to use IPPL's existing design portfolio as well as develop and deliver new products. Counterclaim Defendant improperly encouraged and allowed IPPL to use the "BottleOne" trademark to promote IPPL's business in competition with Counterclaim Plaintiffs and encouraged and allowed IPPL to create a false association between IPPL and Counterclaim Plaintiffs in violation of the DLA's use restrictions and other provisions referenced in the preceding paragraph, and other provisions of the DLA. These actions are a blatant breach of at least Sections 3.1, 3.2, and 3.3 of the License Agreement and multiple provisions of the Term Sheet restricting the use of the "BottleOne" trademark. These actions constitute both federal trademark infringement under Title 15, United States Code, §1114, and false designation of Origin under Title 15, United States Code, § 1125.

9.      Counterclaim Defendant also breached the DLA by failing to hire, manage, and provide sufficient office space, equipment, and resources for a sales force of sufficient size and quality to perform the Marketing Services, and by terminating the employment of both Bill Duelge and Brian Lynch.

10.     The Parties also entered into a Domain Name License Agreement ("DNA"), effective date March 2, 2020. The DNA is attached hereto as **Exhibit C**. Under the DNA, Counterclaim Plaintiffs granted Counterclaim Defendant an exclusive license of use and control of the "bottleone.com" domain name and website in connection with Counterclaim Defendant's

sale of Preforms pursuant to the DLA. Under the DNA, Counterclaim Plaintiffs retained ownership of the domain name and website, including all website content.

11.     On June 4, 2025, Counterclaim Plaintiffs notified Counterclaim Defendant of Counterclaim Defendant's breach of the DLA in contracting with IPPL. The Parties' representatives met in person in an effort to address and resolve the dispute but were unable to do so. On October 24, 2025, Counterclaim Plaintiffs issued to Counterclaim Defendant a Notice of Termination, thereby terminating the DLA (and, by association, the DNA) and any sublicenses, including unauthorized sublicenses, granted by Counterclaim Defendant under the DLA, and therein demanding cessation of all Counterclaim Defendant's DLA-related operations and payment of all unpaid Royalties, including all unpaid portions of Cumulative Royalties, and all unpaid Minimum Royalties and late payment fees. Written notice of the termination of the DLA pursuant to Section 11.2 of the License Agreement was proper and did not require any further dispute resolution requirements due to Counterclaim Defendant's inappropriate and unauthorized use of at least the Counterclaim Plaintiffs Trademark "BottleOne", and as a consequence, infringement of the Counterclaim Plaintiffs Trademark "BottleOne".

12.     On November 6, 2025, Counterclaim Defendant informed Counterclaim Plaintiffs that it had provided Counterclaim Plaintiffs with the "bottleone.com" website content, pursuant to the DLA's termination provisions. However, before turning over the website content to Counterclaim Plaintiffs, Counterclaim Defendant removed certain of the website content from the website, thereby withholding that content from Counterclaim Plaintiffs. Counterclaim Defendant further breached DLA by failing to perform, and to properly staff and support performance of, Marketing Services, including by not maintaining a sales force of sufficient size and quality, and by terminating the employment of Bill Duelge and Brian Lynch.

13. Notwithstanding termination of the DLA and Counterclaim Defendant's purported compliance therewith, Counterclaim Defendant's affiliates and continue to use Counterclaim Plaintiffs' IP, including but not limited to injection and blow molder machines and tools, and Counterclaim Defendant receives the proceeds of such unauthorized use of Counterclaim Plaintiffs' IP. Furthermore, Counterclaim Defendant and its affiliates continue to produce bottles with the "BottleOne" trademarked name.

14. Counterclaim Defendant breached the DLA by failing to pay Counterclaim Plaintiffs all Royalties due for sales of Preforms—including Minimum Royalties, Cumulative Royalties, and other Royalties—and late payment fees; contracting with a direct competitor of Counterclaim Plaintiffs and, in doing so, developing or facilitating development of products, methods, or other IP that is similar to or otherwise competes with the Preforms or any other related Counterclaim Plaintiffs IP and technology; disclosing, granting access, or otherwise making available for use by that direct competitor Counterclaim Plaintiffs IP or trademarks without the express prior written consent of Counterclaim Plaintiffs, thereby creating a false association between Counterclaim Plaintiffs (and its IP and trademarks) and its direct competitor; and failing to maintain quality-control obligations related to Counterclaim Plaintiffs' IP and trademark.

15. Counterclaim Defendant further breached the DLA and the DNA (the "Agreements"), by failing to return all "bottleone.com" content to Counterclaim Plaintiffs following termination of the Agreements, including content Counterclaim Defendant removed from the website prior to returning it to Counterclaim Plaintiffs.

16. Counterclaim Defendant continues to breach the DLA by profiting from the unauthorized use of Counterclaim Plaintiffs' IP following termination of the DLA and allowing

15

its affiliates to, among other things, continue to produce bottles with the "BottleOne" trademarked name.

17.     Whenever in this pleading it is alleged that Counterclaim Defendant did any act or thing or failed to do any act or thing, it is meant that Counterclaim Defendant either did or failed to do such act or thing or that Counterclaim Defendant's officers, agents, employees, servants, attorneys, or other representatives did or failed to do such act or thing, and that at the time such act or thing was done or omitted, the act or omission was accomplished with the full authorization of Counterclaim Defendant or was done or omitted in the normal or routine course and scope of employment of Counterclaim Defendant's officers, agents, employees, servants, attorneys, or other representatives or was done or omitted by an agent or sub-agent of Counterclaim Defendant exercising implied and/or apparent authority, as those terms are understood under law.

## COUNTERCLAIM COUNT I
### BREACH OF CONTRACT

18.     For purposes of this cause of action, Counterclaim Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 17 as if fully restated verbatim.

19.     The Parties entered into the Agreements, which were valid and enforceable.

20.     Counterclaim Defendant breached the Agreements by, among other things, (i) engaging unauthorized third parties; (ii) sublicensing and/or permitting others to use Counterclaim Plaintiffs' IP and/or trademark without Counterclaim Plaintiffs' consent; (iii) failing to pay contractually-owed Royalties and late payment fees; (iv) violating exclusivity and non-transferability provisions of the DLA; (v) failing to maintain quality-control provisions related to Counterclaim Plaintiffs' IP and/or trademarks; (vi) failing to perform, and failing to properly staff and support the performance of, Marketing Services, including by not maintaining a sales force of sufficient size and quality to do so; (vii) terminating the employment of Bill Duelge and Brian

Lynch; (viii) failing to return all website content to Counterclaim Plaintiffs upon termination of the Agreements; and (ix) continuing to profit from the unauthorized use of Counterclaim Plaintiffs' IP.

21.     Counterclaim Plaintiffs fully performed their contractual obligations or were excused from doing so by Counterclaim Defendant's prior material breaches.

22.     Counterclaim Defendant's breaches directly and proximately caused Counterclaim Plaintiffs to suffer monetary damages for which recovery is sought.

23.     Counterclaim Plaintiffs are entitled to damages in an amount to be determined at trial.

## COUNTERCLAIM COUNT II
## ALTERNATIVELY, UNJUST ENRICHMENT

24.     For purposes of this cause of action, Counterclaim Plaintiffs incorporates by reference all of the allegations in paragraphs 1 through 17 as if fully restated verbatim.

25.     In the alternative, Counterclaim Defendant secured and retained financial benefits flowing from the unauthorized use of Counterclaim Plaintiffs' IP, technology, and/or trademarks, and from revenues or profits generated without payment of Royalties or other amounts owed, including late payment fees for late or unpaid Royalties.

26.     Counterclaim Defendant's retention of these benefits is unjust and inequitable, and Counterclaim Plaintiffs is entitled to restitution in an amount to be proved as and when appropriate.

## COUNTERCLAIM COUNT III
## ALTERNATIVELY, TRADEMARK INFRINGEMENT

27.     For purposes of this cause of action, Counterclaim Plaintiffs incorporates by reference all of the allegations in paragraphs 1 through 17 as if fully restated verbatim.

17

28.     In the alternative, Counterclaim Plaintiffs are the owners of valid, protectable trademarks associated with its IP, technology, and products, including Preforms.

29.     Counterclaim Defendant used Counterclaim Plaintiffs' trademarks outside the scope of any authorization provided under the DLA, including by allowing third parties to use the marks, by failing to comply with required quality-control provisions and standards, and by otherwise exceeding the rights granted under the Agreements.

30.     Counterclaim Defendant's unauthorized use of Counterclaim Plaintiffs' trademarks is likely to cause confusion, mistake, or deception as to source, sponsorship, or affiliation and, therefore, constitutes trademark under federal and/or state law.

31.     By reason thereof, Counterclaim Plaintiffs suffered damages, including loss of control over the quality and integrity of its marks, loss of goodwill, and monetary damages for which recovery, including of exemplary damages, is sought herein.

**COUNTERCLAIM COUNT IV**
**ALTERNATIVELY, CONVERSION**

32.     For purposes of this cause of action, Counterclaim Plaintiffs incorporates by reference all of the allegations in paragraphs 1 through 17 as if fully restated verbatim.

33.     In the alternative, Counterclaim Plaintiffs is the owner and has the immediate right to possession of certain proprietary website content, digital assets, text, images, product descriptions, marketing materials, graphics, media files, customer-facing content, and other IP incorporated into the "bottleone.com" domain and website operated by Counterclaim Defendant during the terms of the Agreements, and is the owner, with immediate right to possession, of the domain and website itself.

34. Upon termination of the Agreements, Counterclaim Plaintiffs demanded the return of all website content and related digital materials belonging to Counterclaim Plaintiffs, including any content removed from the website.

35. Counterclaim Defendant wrongfully exercised and continues to exercise dominion and control over website content owned by Counterclaim Plaintiffs by refusing to return all such content.

36. Counterclaim Defendants' refusal to return the website content is unauthorized and inconsistent with Counterclaim Plaintiffs' ownership rights and constitutes conversion under Texas law.

37. By reason of Counterclaim Defendant's conversion of website content, Counterclaim Plaintiffs have suffered damages including, without limitation, the loss of use of its proprietary content, the costs of recreating or replacing digital assets, impairment of its online presence, and other consequential damages, for which they seek recovery herein.

## DAMAGES AND ATTORNEYS' FEES

38. For purposes of these claims for damages, Counterclaim Plaintiffs incorporates by reference all of the allegations in paragraphs 1 through 17 as if fully restated verbatim.

39. Counterclaim Plaintiffs have incurred monetary damages in a sum of at least $3,500,000, comprised of, among other things, all unpaid Royalties—including Minimum Royalties and Cumulative Royalties—and all unpaid late payment fees.

40. In addition, Counterclaim Plaintiffs seek all of their costs, pre-judgment interest, post-judgment interest, all other economic damages suffered by Counterclaim Plaintiffs, and any other amounts due and owing by reason of Counterclaim Defendant's failure to honor its obligations to the full extent allowed by law.

41.     Counterclaim Plaintiffs also seeks exemplary damages, in connection with certain of its causes of action alleged herein.

42.     Counterclaim Plaintiffs are entitled to recover all attorneys' fees incurred in the presentation and prosecution of this action as provided under Chapter 38 of the Texas Civil Practice & Remedies Code and Texas Property Code, the Agreements, and other applicable law. As such, Counterclaim Plaintiffs seeks recovery of all of their reasonable attorneys' fees in prosecuting this matter.

## CONDITIONS PRECEDENT

43.     All of the conditions precedent to bringing this suit have occurred, been performed, been excused, or been waived, including any presentment required for recovery of attorneys' fees. All notices, complaints, or demands were timely and properly given in such a manner as to fully comply with the terms and conditions of the applicable contracts and law. In the alternative, Counterclaim Plaintiffs alleges that as to any such terms, conditions, notices, or requirements, Counterclaim Defendant waived them, Counterclaim Defendant is estopped from asserting them, and/or Counterclaim Plaintiffs substantially complied with them. Counterclaim Plaintiffs make the same allegation of waiver or estoppel as to every defense or exclusion pleaded by Counterclaim Defendant, if any.

## REQUEST FOR RELIEF

In light of the foregoing, Defendants ask this Court to enter judgment in favor of Defendants/Counterclaim Plaintiffs and against Plaintiff/Counterclaim Defendant by granting the following relief:

- Dismissing, with prejudice, Plaintiff's Complaint against Defendants in its entirety;

- Denying all relief that Plaintiff seeks in its Complaint;

20

- Entering a judgment in favor of Defendants that Plaintiff shall take nothing by its Complaint;

- Entering a judgment in favor of Defendants/Counterclaim Plaintiffs against Plaintiff/Counterclaim Defendant awarding all damages sought by Defendants/Counterclaim Plaintiffs in their Counterclaim;

- Awarding Defendants/Counterclaim Plaintiffs interest, both pre-judgment and post-judgment;

- Awarding Defendants/Counterclaim Plaintiffs their costs, expenses, disbursements, and attorneys' fees incurred in connection with this action; and

- Awarding Defendants/Counterclaim Plaintiffs such other relief, both legal and equitable, to which Defendants/Counterclaim Plaintiffs may show themselves justly entitled as well as any other relief that the Court deems just and proper.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted this 10th day of July, 2026,

By:  By: */s/ Talia B. Wagner*_____
Lisa Wolgast
Georgia Bar No. 773399
Lisa.Wolgast@BTLaw.com
Talia B. Wagner
Georgia Bar No. 986221
Talia.Wagner@BTLaw.com
**BARNES & THORNBURG LLP**
3340 Peachtree Rd NE, Suite 2900
Atlanta, Georgia 30326-1092
Telephone: (470) 832-7535

/s/David R. Thrasher
David R. Thrasher (*pro hac* forthcoming)
Texas Bar No. 24027922
Federal I.D. 27205
Daniel A. Ferris (*pro hac* forthcoming)
Texas Bar No. 42125573
KANE RUSSELL COLEMAN LOGAN PC
dthrasher@krcl.com
dferris@krcl.com
5151 San Felipe Street, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7450
Fax: (713) 425-7700

***Attorneys for DT Inventions, LLC and Practically
Impossible Labs, LLC***

22

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |
|---|---|
| In re:<br><br>HANDLE PREFORMS, LLC<br><br>      Debtor. | Chapter 11<br>Subchapter V<br><br>Case No. 26-20125-jrs |
| HANDLE PREFORMS, LLC<br><br>      Plaintiff,<br><br>v.<br><br>DT INVENTIONS, LLC and PRACTICALLY IMPOSSIBLE LABS, LLC<br><br>      Defendants. | Adversary Proc. No. 26-02012-jrs |
| DT INVENTIONS, LLC and PRACTICALLY IMPOSSIBLE LABS, LLC<br><br>      Counterclaim Plaintiffs,<br><br>v.<br><br>HANDLE PREFORMS, LLC<br><br>      Counterclaim Defendant. |  |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will serve all counsel of record.

[SIGNATURE ON FOLLOWING PAGE]

23

Dated: July 10, 2026

/s/ *Talia B. Wagner*
Talia B. Wagner
Georgia Bar No. 986221