**Term Sheet dated January 14, 2020 (the "Effective Date")**

This term sheet ("**Term Sheet**") outlines the terms of a transaction between Handle Preforms LLC ("**HPL**") and DT Inventions LLC ("**DTI**") (each, a "**Party**" and collectively the "**Parties**"). This Term Sheet is explicitly agreed by the Parties to be binding upon the Effective Date, as a legally binding commitment by both Parties. Any further transactions or details between the Parties will be subject solely to one or more mutually agreed upon agreements (each, a "**Definitive Agreement**"). Capitalized Terms not defined in this Agreement shall be defined in the Existing License Agreement (as defined below). The Parties intend that other than the terms listed in this Term Sheet, the Existing License Agreement shall remain in full force and effect.

The Parties will each bear their own legal and other expenses with respect to the negotiation of this Term Sheet and the Definitive Agreement(s). Neither Party shall, without the other Party's prior written consent, use any of the other Party's names, logos, or trademarks (or those of any of its affiliated entities) in any publicity (including any press release or public announcements). This Term Sheet shall be governed and construed under the laws of the State of Texas, excluding its choice of law principles.

| Issue | Terms |
| --- | --- |
| **License(s):** | • DTI will grant to HPL a non-transferable license to the DTI Technology (as defined below) for the purpose of manufacturing bottle preforms based on the DTI Technology (the "**Preforms**") for the sale of those Preforms to third parties (the "**DTI License**"). <br> • The "**DTI Technology**" means that intellectual property and other know how owned or licensed by DTI pertaining to that proprietary bottling methodology used to create an injection stretch blown PET bottle with an integrated handle and other DTI intellectual property, including the following patents [please provide list of DTI patents] (the "**Patents**"). <br> • DTI will grant to HPL a non-transferable license to the BottleOne trademark, in word form and any figurative forms and variations thereof as may be provided by DTI (the "**DTI Marks**") for the purpose of using the DTI Marks solely in connection with HPL's sale of the Preforms (the "**Marks License**"). |
| **Terms of License(s):** | • The DTI License may be exercised on a non-exclusive basis and only within North America, the United Kingdom, and Europe (the "**Territory**") and only for the production, sale, and use of the Preforms, including sale of the bottles resulting from use of the Preforms, within the Territory. Preforms may be sold within or to any industry or market segment; provided, however, if HPL, or its affiliates, facilitates a DTI License for a non-exclusive customer, then HPL shall have an exclusive license: (a) in the customer's market segment in North America, and (b) in the customer's country and market segment in the rest of the world. <br> • Notwithstanding the preceding, the DTI License shall be exclusive to HPL for (a) sales of Preforms within the dairy and edible oil market segments within North America; and (b) sales of Preforms within the dairy market segment within the United Kingdom and Europe. <br> • The Marks License may be exercised on a non-exclusive basis and only within North America, the United Kingdom, and Europe. <br> • Each unique use of the Marks License or application of the DTI Marks shall require DTI's prior, written approval. |

1



| | |
|---|---|
| | • Customer Agreements (as defined in that existing License Agreement between the Parties effective as of September 1, 2019 (the "**Existing License Agreement**")) shall not be required for sales of Preforms permitted by the DTI License. For purposes of clarity, HPL may sell Preforms to customers who have not executed a Customer Agreement with DTI. |
| **Sub-Licensing** | • HPL shall be permitted to sub-license the DTI License and Marks License only to its majority-owned subsidiaries, on the same terms and conditions as the Definitive Agreement(s), and provided HPL has notified DTI, reasonably in advance, of such sub-licensing (including the purpose thereof and identifying details of the sub-licensee).<br>• All other sub-licenses not majority owned by HPL that HPL desires to grant shall require DTI's prior authorization and shall be executed as a tri-party sub-license between DTI, HPL, and the sub-licensee. |
| **Marketing Services** | • HPL will use its best efforts to maximize the exposure of the DTI Technology within the relevant markets and (b) the sale of Preforms (the "**Marketing Services**").<br>• HPL (at its own cost) is responsible for hiring and managing a sales force of sufficient size and quality to adequately perform the Marketing Services, including providing sufficient office space, equipment, and resources for such sales force.<br>• HPL shall not subcontract or otherwise delegate to any third party the Marketing Services or any other obligations of HPL pursuant to the Definitive Agreement(s) without DTI's prior, written authorization. |
| **Website:** | • HPL shall develop certain content for use with the BottleOne website(s) ("**Website Content**"), which website(s) shall remain under DTI's sole control at all times.  Website Content shall be reviewed on 12/31/2021 and 12/31/2023 and HPL shall remain the Website Content if the minimum royalties have been paid to DTI.<br>• |
| **Contract Administration Services** | • HPL will assist DTI in the administration of DTI's license, sales, and other similar royalty-free agreements with HPL future customers (the "**Contract Administration Services**"). |
| **Lab/Showroom** | • Both parties recognize the need and benefit for a Lab but agree to wait to discuss best location and how to build it and support it. |
| | • |
| **Employment Terms** | • Bill Duelge and Brian Lynch (the "**Employees**") shall be employees of HPL (or another entity as directed by HPL)for assistance in HPL's performance of the Marketing Services. HPL shall have control over the Employees, including their day-to-day activities,longer-term objectives, and providing office space.<br>• Jim Thibodeau shall be an employee of DTI (or another entity as directed by DTI).  HPL may request that Jim Thibodeau participate in meetings or provide other assistance to HPL at DTI's expense for Marketing Services; however, if HPL requires Jim Thibodeau's assistance for client support for which HPL is compensated by the client, then HPL shall reimburse DTI for Jim Thibodeau's services and expenses.<br>  • All intellectual property developed by Jim Thibodeau will belong to DTI. |

2



|  |  |
|---|---|
|  | • All intellectual property developed jointly between Bill Duelge and Jim Thibodeau will belong to DTI.<br>• |
| **Ownership:** | • DTI shall retain ownership of all intellectual property in and to the DTI Technology, the Preforms, and the DTI Marks.<br>• All intellectual property, content, and other materials -- whether tangible or intangible -- created, in part or in whole, by any Employee or Jim Thibodeau shall belong solely and exclusively to DTI.<br>• All intellectual property, content, and other materials -- whether tangible or intangible (including all goodwill) -- created by HPL as a result of or incidental to its performance of Marketing Services shall belong solely and exclusively to DTI.<br>• To the extent necessary to give effect to such ownership, HPL agrees to assign such rights to DTI.<br>• DTI shall grant HPL a licensee to all DTI IP not related to the BottleOne technology and HPL and DTI will negotiate a royalty fee for the license. |
| **Fees, Royalties, Costs & Expenses:** | • In consideration for the DTI License, HPL agrees to pay to DTI $0.0225 per Preform produced and sold pursuant to the DTI License for the first 500 million Preforms and $0.03 for each Preform produced and sold pursuant to the DTI License thereafter.<br><br>• HPL shall be required to pay to DTI minimum royalties as follows (the "**Minimum Royalties**"):<br> o Beginning January, 1 2022, $75,000 per month.<br> o A cumulative royalty payment of $3,500,000 by December 31, 2023.<br>• Unless agreed otherwise in the Definitive Agreement(s), each Party is responsible for its own costs and expenses in performing its obligations under the Definitive Agreement(s).<br>• All amounts specified herein and in the Definitive Agreement(s) are in U.S. Dollars and shall be paid in U.S. Dollars. |
| **Governing Law:** | The Definitive Agreement(s) shall be governed and construed under the laws of the State of Texas, excluding its choice of law principles. |
| **Dispute Resolution:** | Disputes shall be arbitrated pursuant to the Commercial Arbitration Rules of the American Arbitration Association in Harris County, Texas (as currently specified in the Existing License Agreement). |
| **Additional Terms:** | The Definitive Agreement(s) will contain customary and reasonable terms (to be negotiated by the Parties) in accordance with the Existing Licensing Agreement. |

\* \* \* \* \*

T.T.

3

The Parties hereby acknowledge their consent to the foregoing as of the Effective Date.

**DT Inventions LLC**

By: _The Tilel / T a Thbrd_

Name: _Thomas Thibodeau / TIM A. THIBODEA_

Title: _CO MANAGER / CO MANAGER_

Date: _1/14/20_

**Handle Preforms LLC**

By: _Greg Kersh_

Name: _GREGORY KERSHNER_

Title: _CEO_

Date: _1/14/2020_

4